1 F.3d 1249
NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 Carol Ann LINDLEY, Plaintiff-Appellee, Cross-Appellant,
v.
Larry Joe LINDLEY, Jack Lindley, Jack Randall Lindley,
Deborah Ann Lindley, and Mary Ruth Lindley,
Defendants-Appellants, Cross-Appellees.
 Nos. 92-6067, 92-6081.
 United States Court of Appeals, Tenth Circuit.
 July 19, 1993.
 
 Before LOGAN and BRORBY, Circuit Judges, and BRIMMER,* District Judge.
 ORDER AND JUDGMENT**
 LOGAN, Circuit Judge.
 
 
 1
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of these appeals. See Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. The cases are therefore ordered submitted without oral argument.
 
 
 2
 Defendants appeal from the district court's order granting plaintiff Carol Ann Lindley's motion to amend the judgment and denying defendants' motions for a new trial or judgment notwithstanding the verdict and for a stay of execution.[1] Defendants contend (1) the award of expense damages is improper; (2) the evidence against defendant Mary Ruth Lindley is insufficient to support the verdict; and (3) the district court abused its discretion by retaining jurisdiction over plaintiff's pendent state-law claims after dismissing her federal securities fraud claim. Plaintiff cross-appeals from the district court's determination that her securities fraud claim was time-barred. We exercise jurisdiction under 28 U.S.C. Sec. 1291, and affirm.
 
 
 3
 Plaintiff and defendant Larry Lindley (Larry) were divorced in 1986. Under the terms of the divorce decree, plaintiff received an equitable one-half interest, secured by a lien, in the stock of several of her ex-husband's businesses, including three Holiday Inns. In 1989, Larry filed for bankruptcy under chapter 7. Plaintiff and the bankruptcy trustee filed suit in bankruptcy court against (among others) Larry, Larry's brother and sister-in-law, and Larry's father, Jack Lindley (Jack), alleging that Larry had fraudulently conveyed to family members the Holiday Inn stock in which plaintiff had been granted an equitable one-half interest. The bankruptcy court determined that the stock, valued at $207,000, had been fraudulently conveyed, and avoided the transfer. Lindley v. Lindley (In re Lindley), 121 B.R. 81, 88 (Bankr.N.D.Okla.1990). Plaintiff was awarded one-half of the property, or $103,500.
 
 
 4
 Based on the bankruptcy court's finding, in October 1990 plaintiff filed this action in federal district court for breach of fiduciary duty, civil conspiracy, securities fraud, and conversion. Larry's mother, Mary Ruth Lindley (Mary Ruth), was added as a defendant in plaintiff's claims for breach of fiduciary duty and conspiracy. The district court thereafter entered its order on the parties' cross-motions for partial summary judgment. Giving the bankruptcy court's order preclusive effect as to all of the defendants in this case except Mary Ruth (who was not a defendant in the bankruptcy proceeding), the district court determined as a matter of law that Larry and the other defendants in the bankruptcy proceeding were liable on plaintiff's claims of conversion, conspiracy, and breach of fiduciary duty in the amount of $103,500 for the converted stock; that plaintiff was not entitled to receive a double recovery; that she was entitled to damages for the expenses of pursuing her property, including accounting and attorney's fees, and to prejudgment interest; and that her securities fraud claim was time-barred. A few days later, the remaining issues, including plaintiff's claims against Mary Ruth for conspiracy and breach of fiduciary duty, were tried to a jury. The jury found against Mary Ruth on both of plaintiff's claims, and also awarded expense damages in the amount of $216,500, mental anguish damages of $7,000, and punitive damages of $100,000. This appeal followed.
 
 
 5
 * Based on plaintiff's testimony and the expert testimony of Harry J. Potter, a certified public accountant, the jury awarded plaintiff accounting and attorney's fees (expense damages) of $216,500. Both plaintiff and Potter testified that the bills were detailed, reasonable, and proper; plaintiff also testified that she had paid them. Defendants contend the award is improper because Potter is not a lawyer and therefore not qualified to testify about attorney's fees in Oklahoma, because plaintiff did not present evidence on all the factors Oklahoma courts use in determining the reasonableness of an attorney's fee, and because the award includes attorney's fees incurred by the bankruptcy trustee. These arguments are without merit.
 
 
 6
 "[A] trial judge's decision to admit or exclude expert evidence is to be sustained unless manifestly erroneous." Lutz Farms v. Asgrow Seed Co., 948 F.2d 638, 647 (10th Cir.1991) (citing Salem v. United States Lines Co., 370 U.S. 31, 35 (1962)). Expert testimony is proper if it will assist the jury in understanding the evidence, and a witness may testify as an expert if he or she is qualified "by knowledge, skill, experience, training, or education." Fed.R.Evid. 702. Plaintiff's expert witness, a certified public accountant and certified fraud examiner with extensive experience in fraud investigation, litigation, and litigation expense review, is clearly qualified under this standard. Defendants' argument that only a lawyer may testify about attorney's fees in Oklahoma is unavailing.
 
 
 7
 In State ex rel. Burk v. City of Oklahoma City, 598 P.2d 659 (Okla.1979), the Oklahoma Supreme Court discussed the means by which a trial court should determine reasonable attorney's fees when the fees were to be paid from an equitable fund or trust fund. The court found no conflict between several federal decisions on this issue and the Oklahoma Code of Professional Responsibility, which lists eight criteria for guidance in determining the reasonableness of a fee. DR 2-107, Okla.Stat.Ann. tit. 5, ch. 1, app. 3. We reject defendant's arguments that there is an insufficient basis for the fee award because plaintiff did not present evidence on all of the eight criteria, and that the jury's award improperly includes expenses incurred by the bankruptcy trustee. Not all of the eight criteria are relevant in every case, and we are unwilling to hold that evidence on each of these factors must be presented in a case like the one before us, when the issue is reasonableness of fees already paid out by a party attempting to recover them as damages. Defendants' challenge can also be seen as an attack on the jury instructions. See Will v. Comprehensive Accounting Corp., 776 F.2d 665, 675 (7th Cir.1985) (holding that parties in civil case are bound by legal theory reflected in jury instructions to which they did not object), cert. denied, 475 U.S. 1129 (1986). Defendants did not include the jury instructions in the record on appeal. "It is the appellant's duty to make certain that the record on appeal is sufficient to enable this Court to make a meaningful review of any matter urged as ground for reversal." United States v. Quarry, 614 F.2d 245, 246 (10th Cir.1980). We must affirm in the absence of a basis in the record to hold otherwise.
 
 II
 
 8
 Plaintiff alleged that Mary Ruth conspired with other defendants in fraudulently inducing her to convey her interest in the Holiday Inn stock for $40,000. Defendants argue the evidence is insufficient to support the verdict against Mary Ruth on this claim.[2]
 
 
 9
 To constitute a conspiracy, there must be a meeting of the minds on the course of action, coupled with an intent to commit the fraudulent act which results in the injury. The agreement is a matter of inference from the facts and circumstances of the alleged conspirators. The question is whether the circumstances, considered as a whole, show that the parties united to accomplish the fraudulent scheme.
 
 
 10
 Shadid v. Monsour, 746 P.2d 685, 689 (Okla.Ct.App.1987) (footnotes omitted).
 
 
 11
 The evidence against Mary Ruth revolved primarily around a check for $40,000 made out to Larry and plaintiff in April 1986. The check was drawn on Mary Ruth's joint account with her husband, Jack, and was signed by Jack. In the bankruptcy action, Larry and Jack testified that the check represented money paid to purchase the Holiday Inn stock in which plaintiff retained an equitable interest under the divorce decree. The check itself bears a notation to this effect. Appellees' Supp.App. at 203. Plaintiff testified that Larry had told her the check was a gift from Jack to help them pay bills, and that the notation concerning stock was added sometime after she endorsed the check and gave it to Larry to deposit. Id. at 140, 142. Plaintiff testified that the stock was valued on Larry's financial statement at $835,000. Id. at 156. The bankruptcy court determined that the check had been tampered with and the purported conveyance of stock was fraudulent. In re Lindley, 121 B.R. at 85.
 
 
 12
 Mary Ruth's role in this transaction was disputed. At trial, plaintiff testified that although Mary Ruth's deposition indicated that plaintiff and Mary Ruth had not talked about selling plaintiff's stock, Mary Ruth had testified at the bankruptcy proceeding that the two of them had had many conversations about such a sale. Appellees' Supp.App. at 156. In response, Mary Ruth explained that she had had no conversations with plaintiff about the sale of stock beforehand, but many conversations with plaintiff about the sale afterward. Id. at 172-74. Mary Ruth further stated that she knew Jack intended to buy Larry and plaintiff's stock with the check, id. at 165, but Jack and Mary Ruth's 1988 joint federal tax return indicated that Jack had not made any such purchase in 1986 or 1987. Id. at 302. Potter testified that the $40,000 check was most likely a joint split gift from Jack and Mary Ruth. Id. at 182-85.
 
 
 13
 Evidence is sufficient if "there is any competent evidence or reasonable inference from circumstances reasonably tending to establish a cause of action or to sustain the jury's verdict and judgment based thereon." Doyle v. Kelly, 801 P.2d 717, 719 (Okla.1990) (quoting Silk v. Phillips Petroleum Co., 760 P.2d 174, 176 (Okla.1988)) (internal quotation marks omitted). The evidence tends to show that Mary Ruth knew about the tampered check and took action to help Larry and Jack cover up the fraud. The jury was entitled to disbelieve her explanation of the inconsistency between her deposition and bankruptcy trial testimony. The evidence is sufficient to support the jury's finding of Mary Ruth's liability on plaintiff's conspiracy claim.
 
 III
 
 14
 Finally, defendants argue that the district court should have dismissed plaintiff's pendent state-law claims after it dismissed her federal securities fraud claim, upon which federal jurisdiction was based. We review the district court's decision to retain jurisdiction of the state-law claims for abuse of discretion. Sullivan v. Scoular Grain Co. of Utah, 930 F.2d 798, 803 (10th Cir.1991).
 
 
 15
 The decision to exercise power over pendent state claims is "informed by 'considerations of judicial economy, convenience and fairness to litigants' and comity in the federal system." Id. (quoting United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966)). Here, a serious question was raised in plaintiff's federal claim, and the district court dismissed it only six days before trial. The court and the parties had expended substantial time and energy during nearly a year of litigation in this forum. In addition, it is questionable under the statute of limitations whether plaintiff would have had a state forum if the district court had dismissed her state claims. Judicial economy, convenience, and fairness therefore weigh in favor of the district court's retention of jurisdiction. We find no abuse of discretion.
 
 IV
 
 16
 Having determined that the district court did not abuse its discretion in retaining jurisdiction over plaintiff's pendent state-law claims, we do not need to reach plaintiff's cross-appeal on her securities fraud claim.
 
 
 17
 AFFIRMED.
 
 
 
 *
 Honorable Clarence A. Brimmer, United States District Judge for the District of Wyoming, sitting by designation
 
 
 **
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3
 
 
 [1]
 Although a notice of appeal from a post-trial motion is technically defective, "we may treat the appeal as taken from the final judgment if the appeal is otherwise proper, the intent to appeal from the final judgment is clear, and the opposing party was not misled or prejudiced." Grubb v. FDIC, 868 F.2d 1151, 1154 n. 4 (10th Cir.1989). These conditions have been met here. Therefore, we will treat this appeal as if defendants had taken it from the January 27, 1992, final judgment
 
 
 [2]
 Although defendants' statement of the issue would imply that they also challenge the sufficiency of the evidence to support the verdict on plaintiff's breach of fiduciary duty claim, defendants make no argument with respect to that claim. Therefore, we affirm the verdict on that claim without discussion