In re Steven J. HELMKE and Angela K. Helmke, Debtors.

In re Elizabeth Hollie Helmke, Debtor.

Marvel Concrete, Inc., a Colorado Corporation, Plaintiff,

v.

Steven J. Helmke, and Angela K. Helmke, Defendants.

Marvel Concrete, Inc., a Colorado Corporation, Plaintiff,

v.

Elizabeth Hollie Helmke, Defendant.

Bankruptcy Nos. 05–46660 ABC, 05–46644 MER.

Adversary Nos. 06–1264 ABC, 06–1265 MER.

United States Bankruptcy Court, D. Colorado.

Nov. 10, 2008.

---

John G. Nelson, Denver, CO, for Plaintiff.

Colin E. Moriarty, Jennifer E. Tauer, Paige Wright, Underhill & Underhill, Greenwood Village, CO, for Defendants.

## ORDER DENYING DEFENDANTS' MOTION FOR RECONSIDERATION

A. BRUCE CAMPBELL, Bankruptcy Judge.

This matter is before the Court on the Motion to Reconsider Order Regarding Civil Theft ("Motion") filed by Defendants Steven and Angela Helmke and Elizabeth Hollie Helmke ("Defendants"), the Response filed by Plaintiff Marvel Concrete, Inc. ("Plaintiff"), and Defendants' Reply. The Court, having reviewed the file and being otherwise advised in the premises, finds as follows:

As a preliminary matter, the Court notes that no final judgment has been entered in these adversary proceedings. Fed.R.Civ.P. 59(e), made applicable to these adversary proceedings by Fed. R. Bankr.P. 9023, requires motions to reconsider to be filed not later than ten days *after* entry of a final judgment. However, there appears to be general agreement among courts and commentators that the ten-day limit of Rule 59(e) "sets only a

maximum period and does not preclude a party from making a Rule 59 motion before formal judgment has been entered." *Hilst v. Bowen,* 874 F.2d 725, 726 (10th Cir.1989). Therefore, the Court will consider Defendants' Motion as a timely filed motion to alter or amend a "judgment" under Rule 59(e).

■ Defendants argue that the Court's findings do not support its conclusion that the Defendants had the mental state necessary to commit civil theft under C.R.S. § 18–4–401. Defendants therefore request the Court to vacate its award of treble damages and attorneys fees under Colorado's Rights in Stolen Property Statute, C.R.S. § 18–4–405. They argue that, because the Court found that Defendants honestly hoped and desired to save their business and pay its creditors, including Plaintiff, that they could not have committed civil theft. They argue that this Court has misconstrued the Colorado Supreme Court's decision in *People v. Anderson,* 773 P.2d 542 (Colo.1989), regarding the mental state necessary to commit civil theft in connection with misuse of funds held in trust under the Mechanics' Lien Trust Fund Statute, C.R.S. § 38–22–127.

The Court's finding that Defendants had the subjective hope and intent to keep their business open so that all creditors would eventually be paid does not negate its finding that they knowingly used funds held in trust under the Mechanics' Lien Trust Fund Statute in a manner which was practically certain to deprive Plaintiff of the use and benefit of *those trust funds.* This latter finding is that which is required to establish civil theft under *Anderson.*

■ The plain language of the civil theft statute, as interpreted in *Anderson,* directs that the focus of the civil theft claim in this case must be what Defendants intended to do with the trust funds themselves, an identified *res* of specific property. It is the Defendants' actions and knowledge with respect to this identified fund that is critical to the determination of whether or not they committed theft in connection with application of the Colorado Mechanics' Lien Trust Fund Statute.

The Colorado theft statute provides that theft is committed if a person:

> knowingly obtains control over the property of another without authorization and, even though not intending to deprive the other person permanently of the use or benefit of the property, nonetheless knowingly uses the property in such manner as to deprive the other person permanently of the use of benefit of the property.

*People v. Anderson,* 773 P.2d at 545.[1]

■ In this case, as in *Anderson,* the property at issue was the specific fund of money paid to Defendants for the benefit of Plaintiff and other subcontractors on the seven construction projects that are the subject of these adversary proceedings. The Colorado Mechanics' Lien Trust Fund statute mandates that *those particular funds,* while not required to be segregated, be held in trust for the benefit of Plaintiff and other unpaid suppliers. When Defendants spent those funds for purposes other than payment for supplies and labor on the projects involved, as they admittedly did, they took property which they held in trust for Plaintiff and used it in a manner that could have no other

---

1. *Anderson* also instructs that "knowingly using" trust funds in a manner so as to deprive a person permanently of the use and benefit of the trust funds means being aware that one's conduct is "practically certain" to cause the person to be permanently deprived of the trust funds. 773 P.2d 542, 545 n. 4.

consequence than to deprive Plaintiff of the use and benefit of *those funds*.

In *Anderson*, the defendant contractor received $24,000 from two homeowners for payment of construction bills on their home. The evidence from a prior administrative proceeding was that the defendant expected to be able to pay the unpaid bills on the home with this money, but that he eventually used $16,000 of the $24,000 to pay bills on other construction projects. The evidence at the preliminary hearing in the criminal case was insufficient to show that the defendant intended to permanently deprive the homeowners of the use and benefit of their money. Justice Quinn stated, however, that criminal theft might be proved in this fact situation based on evidence that the defendant, with knowledge of unpaid bills on the homeowners' property, and without their authorization, used some of the trust funds "for purposes totally unrelated to the construction of [the homeowners'] home." *Id.* Such evidence showed that the defendant knowingly used some of the trust fund "in such manner as to deprive the [homeowners] of the use and benefit of *that money* which the [homeowners] had disbursed to the defendant for the purpose of paying subcontractors, suppliers, and laborers for work performed on [their] home." *Id.* at 546 (emphasis added).

The exact same fact situation is present in this case. The evidence showed that the Defendants knew that Plaintiff was unpaid for its work on the seven projects for which Defendants' company had received trust funds. The evidence also showed that Defendants knew that their use of the trust funds to pay bills unrelated to those projects would certainly result

in Defendant not receiving the use and benefit of *those funds*. This evidence requires this Court to find that Defendants committed civil theft under C.R.S. § 18–4–401(1)(b).[2]

Therefore, it is

ORDERED that Defendants' Motion to Reconsider Order on Civil Theft is denied.

---

**2.** If the property held in trust for Plaintiff by Defendants was a chattel, rather than a monetary fund, this analysis would be more obvious. Defendants could not claim they did not commit theft if they knowingly took a car held in trust for Plaintiff and sold it without authorization, even though it was their honest hope and intent to eventually replace the car.